ELY, ESTATE OF, IN RE: ELY, PLAINTIFF, *v.* BRENNEMAN, JUDGE, DEFENDANT.

Ohio Appeals, Ninth District, Lorain County.

No. 1607.   Decided August 14, 1963.

*Messrs. Walter & Haverfield* and *Mr. G. L. Severs,* for plaintiff.

*Mr. Paul J. Mikus,* prosecuting attorney, and *Mr. Raymond A. Muzilla,* assistant prosecuting attorney, for defendant.

*Mr. William B. Saxbe,* attorney general, *Mrs. Neva H. Wertz,* assistant attorney general, *Mr. J. C. William Tattersall* and *Mr. Andrew J. Warhola,* Amici Curiae.

HUNSICKER, P. J.   This is an original action in prohibition, filed in this court.

Helen C. Ely, as cotrustee and beneficiary of the testamentary trust of William A. Ely, deceased, filed in the Probate Court of Lorain County, Ohio, a motion, and thereafter an amended motion, to remove as cotrustee of that estate the Savings Bank and Trust Company of Elyria, Ohio.  This bank is now known as First National Bank of Elyria.

The Probate Judge of Lorain County determined that he was disqualified from hearing the matter and requested the Chief Justice of the Supreme Court of Ohio to assign another judge to hear and determine the motion.  A common pleas judge from a neighboring county was then assigned to hear the motion.  After several days of trial, such judge disqualified himself and requested the Chief Justice of the Supreme Court of Ohio to assign another judge to hear the motion then filed. A motion was filed by the cotrustee bank to remove Helen C. Ely as cotrustee, and the amended motion of Helen C. Ely was thereafter filed.

The Honorable Myron T. Brenneman, the duly elected, qualified, and acting judge of the Probate Court of Wayne County, was then assigned to hear these motions.  This assignment was made under authority of Section 2101.39, Revised Code.  That statute permits the assignment of some probate judge or some common pleas judge to hear the matter in the event of the disqualification of the probate judge of the county

The case proceeded to trial, and after several days of trial the matter was recessed. At the resumption of the hearing after this recess, Helen C. Ely filed a motion to remove Judge Brenneman as the presiding judge, for the reason that he did not have jurisdiction to hear and determine the matter. The motion to remove Judge Brenneman was overruled, and the hearing on the matter was ordered to proceed.

Helen C. Ely then filed in this court a petition for a writ of prohibition, wherein an order is prayed for to prohibit Judge Brenneman "from hearing and determining said amended motion to remove the Savings Deposit Bank and Trust Company as cotrustee of the testamentary trust of William A. Ely, deceased, and from in any manner complying with said order of reference, so made as aforesaid, and for such other and further order in the premises as the nature of the case may require."

A demurrer to this petition was then filed by counsel for Judge Brenneman, which demurrer gave as grounds thereof:

"(1) That it appears upon the face of the petition that the facts therein contained do not constitute a cause of action in favor of the plaintiff and against this defendant.

"(2) That it appears upon the face of the petition that the issue herein raised has been submitted by the plaintiff and has been determined by the court in the action now pending before Judge Brenneman in the Probate Court of Lorain County, Ohio.

"(3) That it appears upon the face of the petition that there is a defect of parties-defendant herein in that William B. Saxbe, Attorney General of the State of Ohio, is a necessary party-defendant and has not been made a party herein."

This court tentatively overruled such demurrer and proceeded to hear arguments upon the merits and considered herein that an appropriate answer and reply thereto, if needed, was filed. We now adhere to the previous overruling of the demurrer.

The issue raised involves one concise question, which is: Has a probate judge of a county in which he has not been elected, the right to temporarily preside, hear, and determine, a controversy arising in the Probate Court of another county to which he has been assigned, under authority of Section 2109.39,

Revised Code? In other words, is the section of the Revised Code which permits the Chief Justice of the Supreme Court to assign a probate judge of another county to sit in a county in which he has not been elected, authorized by the Constitution of the state of Ohio?

Under the Constitution of this state, Article IV, Section 1, the judicial power is vested in a Supreme Court, Court of Appeals, Courts of Common Pleas, Courts of Probate, and such other courts inferior to the Courts of Appeals as may from time to time be established by law.

"The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law."

Article IV, Section 4.

There is no similar provision with respect to judges of the Probate Court. There is, in Article IV, Sections 7 and 8, reference to the Probate Court, but no reference to the probate judge or his jurisdiction.

An examination of the proceedings of the Constitutional Convention of 1912 shows that considerable discussion was had concerning state-wide jurisdiction of judges of the Common Pleas Court, but no such proposal was advanced for judges of the Probate Court.

Article IV, Section 18, says:

"The several judges of the supreme court, of the common pleas, and of such other courts as may be created, shall, respectively, have and exercise such power and jurisdiction, at chambers, or otherwise, as may be directed by law."

This is a unique provision, not found in any other of many state constitutions examined in our consideration of this case. Do the provisions of Article IV, Section 18, confer power upon the legislature to grant, to a probate judge, jurisdiction outside the county of his residence?

Two Ohio Supreme Court cases have discussed this Section 18, and limited its application. These cases are: *Kent v. Mahaffy*, 2 Ohio St., 498; and *Pittsburgh, Ft. Wayne and Chicago Ry. Co. v. Hurd and Fair*, 17 Ohio St., 144. They determine that the legislature cannot confer original jurisdiction on the Supreme Court beyond that specially set out in the Constitution of Ohio.

If Article IV, Section 18, permits the legislature to in-

crease the specific constitutional grant of power to the judges of any court, those created by law and those created by the constitution, then, perhaps, all distinction between appellate and trial courts could be removed or, in effect, abolished, by a restriction upon the jurisdiction of a court.

The Probate Court is a constitutional court; it is not created by the legislature. The jurisdiction of that court, as distinguished from the judge, is fixed, both by the constitution and by the legislature, acting under a specific constitutional grant of power. Constitution of Ohio, Article IV, Section 8. There is a distinction between a court and a judge.

"The court is a tribunal organized for the purpose of administering justice, while the judge is the officer who presides over that tribunal.

"The term 'court' and 'judge' are sometimes used interchangeably and synonymously, but they are never technically the same in meaning.

"A court is an incorporeal, political being, composed of one or more judges, who sit at fixed times and places, attended by proper officers, pursuant to lawful authority, for the administration of justice." *State, ex rel. Hawke,* v. *Le Blond, etc.,* 108 Ohio St., 126, at pp. 132-133.

The wording of Section 18 of Article IV of the Ohio Constitution limits the seemingly-broad powers therein to acts in "chambers, or otherwise." This phrase *seems to relate to provisional remedies,* actions taken by a judge preliminary to a full trial, and administrative matters which frequently come before a judge, but not the court.

Our examination of the 1802 Constitution of Ohio, and the original 1851 Constitution of Ohio, together with the amendments of 1883, show that in the 1802 Constitution the judicial power of the state of Ohio was vested in a Supreme Court, Courts of Common Pleas, Justices of the Peace, and in such other courts as the Legislature might from time to time establish. There was in that Constitution no specific provision with respect to the power of the legislature to fix the jurisdiction of judges of the Courts of Common Pleas. Such a provision did not appear until the Constitution of 1851. Also, in the Constitution of 1802, the Court of Common Pleas was given jurisdiction in all probate and testamentary matters.

In the original Constitution of 1851, the judicial power of the state of Ohio was vested in a Supreme Court, District Courts, Courts of Common Pleas, Courts of Probate, Justices of the Peace, and in such other courts, inferior to the Supreme Court, in one or more counties, as the General Assembly might from time to time establish. The amendment of 1883 provided for Circuit Courts instead of District Courts.

In the original Constitution of 1851, there appeared for the first time a provision granting power to the Legislature to fix the jurisdiction of the Courts of Common Pleas, and of the judges thereof. There also appeared for the first time the provision then, and also now, known as Article IV, Section 18.

In the case of *Pittsburgh, Ft. Wayne and Chicago Ry. Co.* v. *Hurd et al.*, 17 Ohio St., 144, the Supreme Court, construing Article IV, Section 18, said, at pages 146-147:

"This section divides the powers which may be conferred by law on the several judges, into two classes; according as its subject matter makes it a jurisdiction to be exercised 'at chambers' or, to be exercised '*otherwise*.'

"The phrase '*at chambers*' is a technical one. The term 'chambers' is thus defined by Burrill: 'The office or private rooms of a judge, where parties are heard, and orders made, in matters not requiring to be brought before the full court, and where costs are taxed, judgments signed, and similar business transacted.' Burrill's L. Dic. And thus by Bouvier: 'When a judge decides some interlocutory matter, which has arisen in the course of the cause, out of court, he is said to make such decision at his chambers.' Bouvier's L. Dic.

"This phrase, as used in the constitution, is to be understood in this, its ordinary sense. And we are clearly of opinion, that the jurisdiction now invoked, and which is supposed to have been conferred by statute, is one to be exercised, if at all, 'at chambers.' For, a single judge of this court is asked, out of court, to dissolve an injunction now subsisting in a cause still pending in the court of common pleas. An order thus made, out of court, in a cause pending in a court, is *ex vi termini*, the exercise of jurisdiction 'at chambers,' and not 'otherwise.' Now the provision of the constitution is, that the several judges of

this court, shall have and exercise such power and jurisdiction at chambers as may be directed by law; and the question arises, whether a capacity is thereby conferred on the members of this court to receive at the hands of the legislature a chamber jurisdiction in causes pending in other courts of which the judges of this court are not members. We all concur in answering this question in the negative. Jurisdiction at chambers is incidental to, and grows out of the jurisdiction of the court itself. It is the power to hear and determine, out of court, such questions arising between the parties to a controversy, as might well be determined by the court itself, but which the legislature has seen fit to intrust to the judgment of a single judge, out of court, without requiring them to be brought before the court in actual session. It follows, that the jurisdiction of a judge at chambers, can not go beyond the jurisdiction of the court to which he belongs, or extend to matters with which his court has nothing to do. And the constitution, in granting such jurisdiction at chambers to the judges of the several courts of the state, as may be directed by law, is to be understood as limiting the jurisdiction of each to such subject matters as are within the jurisdiction of his proper court, and to which it is, *ex vi termini*, limited."

Section 18, of Article IV, does not grant a power to extend the jurisdiction of judges of Probate Courts beyond the limits of their respective counties, as has been specifically given judges of Courts of Common Pleas by virtue of Article IV, Section 4.

We are of the opinion that the Constitution of Ohio does not give to the Legislature power to enlarge the scope of authority of a probate judge so as to permit a probate judge of one county to hold court in another county.

The writ prayed for herein is granted.

DOYLE and STEVENS, JJ., concur.